### IN THE

## COURT OF APPEALS

### OF

## MARYLAND.

---

COURT OF APPEALS, DECEMBER TERM, 1815.

### SHIELDS's Lessee vs. MILLER.

APPEAL from *Frederick* County Court. Ejectment for a tract of land called *Shields' Adventure.* Defence was taken on warrant, and plots were made.

At the trial in the county court at August term 1807, the plaintiff offered in evidence the plots, explanations, and table of courses, returned in the cause, by which it appeared, that among other tracts located on the plots, was *Carrollsburg*, stated to have been granted to *Charles, Daniel,* and *Mary Carroll*, on the 2d of September 1732. He also read in evidence a grant for *Shields' Adventure*, dated the 6th of November 1795, and several other grants, and then offered to read in evidence the grant of *Carrollsburg*, to *Charles, Mary,* and *Eleanor Carroll*, on the 8th of August 1735, and stated to have been surveyed on the 2d of September 1732. To the reading of this last grant the defendant objected, and prayed the opinion of the court, that it was no evidence, and that it should not be read to the jury. Which opinion the Court, [*Buchanan*, Ch. J. and *Clagett*, and *Shriver*, A. J.] gave, and refused to let the grant be read. The plaintiff excepted; and the ver-

A grant was located on the plots by the plaintiff in ejectment, as issued to C, D and M C, on th *2d of September .732.—Held,* that he might offer in evidence a g ant to C, M and E C, on the *8th of August* 1735 The plaintiff proved by a witness the time when M S was born. The defendant then proceeded to examine the same witness, in order to establish his location made on the plots of a tract of land called C, for which he took defence. The plaintiff then offered to ask the witness if he did not own or claim title to the tract of land called P, located by the defendant, in order to show that the witness was interested in having the defendant's location of C establish. d—*Held,* that the plaintiff was at liberty to ask the question, for the

purpose of showing the witness interested and incompetent to give evidence relative to the location of C. The true location of a tract of land is a question of fact to be decided by the jury on the evidence, and it is their duty to find the location in such place where, from the evidence they shall be of o inion the lines thereof were originally run, unless they shall also find from the evidence, the party, insisting on the original location, prevented, by some agreement, by adverse possession, or by some other legal bar, from availing himself of such location

1815.

Shields
vs
Millor

dict and judgment being against him, he appealed to this court.

The cause was argued at June term 1811, before Polk, Nicholson, and Earle, J.

*Martin*, for the Appellant. It is admitted that the jury ought not to find contrary to what is by both parties agreed to be crue, whether by their pleadings, or in any other manner. It is also admitted, that the plots, as far as relates to the claim of the plaintiff, and defence of the defendant, are a part of the *pleadings*. For the plaintiff declares, that the defendant wrongfully ejected him from such a tract or part of a tract of land, as is contained within the locations on the plots *of his claim*. And the defendant replies, that he admits to have ejected the plaintiff out of such lands as are included within *his defence*, and relies upon being able to prove that he was guilty of no impropriety in so doing—as to all else the locations are *evidence;* but it is admitted, that if both locate a tract alike, or, as happens in most cases, if one doth not counterlocate the locations of the other, it is an agreement that the locations are right. It is said that plots cannot be considered as introduced instead of the view, because six jurors might view, but twelve must see the plots. What are the plots but a *miniature representation, on paper,* of the property actually in dispute? There is represented the same grant, with its actual courses and boundaries, which you might examine on the view, by those courses and boundaries, and every object which could be necessary on the view to be examined by way of evidence, or for any other purpose, might be delineated on the plots. But as the plots are only used in evidence at the trial in court, after the jury are sworn, the plots, like all other evidence, must be offered to the whole twelve. It is admitted, that the plaintiff and defendant were both precluded from saying that there was not a tract called *Carrollsburg,* as delineated on the plot, granted to *Charles, Daniel,* and *Mary Carroll,* on the 2d of *September* 1732, beginning and running as laid down on the plots. But it is denied, that it was inconsistent with this admission to give evidence, that on the 8th of *August* 1735, a patent was issued to *Charles, Mary,* and *Eleanor Carroll,* for the same land, beginning at the same place; the one is perfectly consistent with the

other. Twenty patents may be granted for the same land, or twenty deeds for the conveyance of the same land. Nor is it improper for the jury to find such patent, it not being contradictory to what was admitted in pleading or in evidence. Nor is there any inconsistency between the *allegata* and *probata* in allowing the evidence proposed to be given. It was not proposed to rely upon any recital to prove the grant of 1735, but the grant was produced and offered to be read. The beginning of the patent offered in evidence may be similar to that located on the plot; yet no evidence that their location in the country are the same. If the beginning in the country is the same, their location must be, because the courses are the same which are located; and whether the beginning of this patent was in the country, at the same place, must have depended upon evidence to be given *after* the patent was read in evidence, and which could not be given in evidence before. The land contained in the grant being located, authorised the reading any grant or any deed, the lines of which were similar, and the beginning the same. This principle has been solemnly decided in a number of cases.

*Key*, *Shaaff*, *Taney* and *Brooke*, for the Appellee. The plots are the pleadings in the cause, and are to have all the strict construction of pleadings. It is a rule in pleading, that what is admitted by the parties in pleading shall be taken to be true, although the jury should find to the contrary. Here the plots being the pleadings in the cause, both parties have pleaded that a grant for *Carrollsburg* issued to *Charles*, *Daniel*, and *Mary Carroll*, on the 2d of September 1732. This then, being taken to be true under the rule above mentioned, the jury cannot find that the grant for the same tract called *Carrollsburg* issued on the 8th of August 1735, to *Charles*, *Mary*, and *Eleanor Carroll*, because such finding would be contrary to the admissions of the parties in pleading. And if the jury cannot be permitted to find the fact, it would be improper to allow any evidence of such fact to go to them. It is contended, on the other side, that the plots are not, for every purpose, to be considered as the pleadings, but are used by way of illustration, and substituted in the place of the *view*, in *England*. But the principles of law applicable to views in *England*, and plots in this country, are totally different,

1815.

Shields
vs
Miller

It is sufficient that six of the jury see the land, &c to be view-
ed. But it will scarcely be contended, that only six of the
jurors need see the plots. It was held, in *Baltimore* county
court, in the case of *Hughes vs. Howard,* 3 *Harr. & Johns.*
9, wt ere both parties located from the same beginning, that
such place must be taken to be the true beginning; and the
jury having found a diff rent beginning, the court set aside the
verdict as being contrary to the admissions of the parties
by the plots. In the same case it was determined by the
same court, and this court, that the party, having given
but one location of the plan of *Baltimore-town,* he could
not offer in evidence a plan different in its location. In
*Hammond vs. Norris,* 2 *Harr. & Johns.* 130, a similar
principle was established. These, and other determinati-
ons, establish this doctrine, that the plots are to be consi-
dered as the pleadings, and to have the same effect; and are
not to be considered as mere illustration, and a substitute
for the view in *England.* If the defendant does not take
defence co-extensive with the plaintiff's claim and preten-
sions, judgment by default is entered for all the lands for
which the defence does not appear on the plots. Now,
what is mere matter of illustration can never be a ground
upon which a judgment by default can be entered. The
*allegata* and *probata* must correspond. If the plaintiff
declares on a lease of a certain date, and offers in evidence
a lease of a different date, the evidence is inadmissible.
*Scavage vs. Parker, Cro. Jac.* 647. If the plaintiff declares
on a bond by defendant, he cannot offer in evidence a bond
by defendant and another person, although such other person
be dead. *Viner's Ab.* tit. *Evidence,* 65. If a plaintiff un-
dertakes to set out a statute, and gives it a wrong date, it
is fatal. *Plow.* 84. 1 *Com. Dig.* tit. *Action upon Sta-
tute,* (I) 330. It is contended, that it appears by the *re-
cital* of the certificate that the land is the same. It is cer-
tain that without such recital there is no evidence of the
land being the same. But this *recital* is no evidence in
the cause. The recital of a deed, record, lease, &c. in
another deed or record, is no evidence of such *recited* deed,
&c. *except against the parties to it, or those claiming un-
der it,* who are estopped to aver any thing contrary to their
own deed, or the deed of the person under whom they make
title. 4 *Com. Dig.* tit. *Evidence,* (B 5,) 93. The recital
being rejected, as the defendant is not a party to it, and

does not claim under it, the patent is a naked grant, totally different in substance from that set out in the explanations; and there is no evidence in the cause to show that they are the same; for although the beginning, described in the patent offered in evidence, may be *similar* to the beginning of the land described on the plots, yet there is no evidence that they are the same in the country.

THIS COURT *reversed* the judgment of the County Court, and awarded a *procedendo.*

POLK, J. dissented.

1. At the new trial had in the County Court at August term 1812, the plaintiff gave in evidence the plots and illustrations returned in the cause; and also grants of the following tracts of land, viz. *Carrollsburg, Carrick's Chance,* and *Shields' Adventure,* the last being the tract for the recovery of which this action is brought. And offered in evidence, that *Carrollsburg* is truly located on the said plots by him, with the allowance of one degree and one half degree for variation; and that *Carrick's Chance* and *Shields' Adventure,* are also truly located by him. He also gave in evidence the last will and testament of *William Shields,* the grantor of *Shields' Adventure,* dated the 30th of November 1789, whereby the testator directed, that as much of his personal estate, slaves included, as should be judged necessary to pay off all his legal debts and funeral expenses, and also to make out good right for the part of his land which was not patented or conveyed to him, be sold and turned into cash, and the money arising from such sale be applied by his executors to the above purpose twelve months after his decease, or as soon as it may be in their power to collect the money; also, that on his youngest daughter, *Margaret's,* arrival to the age of sixteen, he directed that then all his real and personal estate should be sold and turned into cash, and the money arising from such sale to be distributed and divided by his executors. whom he empowered and authorised to convey and make good rights to the purchasers of all his real and personal estate, amongst all his children, to wit: *John, James, Henry, William, Samuel, Agnes, David, Banner, Ebenezer* and *Margaret.* He constituted and appointed his sons, *John* and *James,* his executors.

The will was proved the 9th of August 1797. And also the letters testamentary which were granted to *John Shields*, one of the executors named in the will, on the same day. And a deed from the said *John Shields* to *William Shields*, dated the 13th of December 1800, for a tract of land consisting of parts of *Carrollsburg*, *Shields' Adventure*, *Carolina*, *Carrick's Chance*, and *Shields' Delight*, containing 560½ acres and 26 poles, and described by courses and distances, &c. containing a proviso that the said *William Shields* should pay to the said *John Shields* certain sums for which he had given his bond, on, &c. And a deed from the last mentioned *William Shields* to the aforesaid *John Shields*, the lessor of the plaintiff, dated the 8th of January 1801, for the same lands as mentioned and expressed in the last above mentioned deed. The defendant then gave in evidence the patent of *Carrollsburg*, and his location thereof on the plots, with four degrees and a half for variation; and the grants of *Porter's First Addition*, dated the 29th of September 1764, and *Porter's Second Addition*, dated the 29th of September 1764, both granted to *William Porter*, and the defendant's locations of those two tracts on the said plots. The plaintiff then called upon a certain *Henry Williams* as a witness, and gave in evidence by him, that *Margaret Shields*, mentioned in the said will, was born on the 2d of October 1783. He examined him to no other point. The plaintiff then gave the witness over to the defendant for cross examination. The defendant then proceeded to examine the witness, in order to establish his location of *Carrollsburg*, at which time the plaintiff offered to ask the witness, whether he, the witness, did not own or claim title to the tracts of land called *Porter's First Addition*, and *Porter's Second Addition*, located by the defendant, in order to show that the witness was interested in having the location of *Carrollsburg* established. But the Court, [*Buchanan* Ch. J. and *Shriver* A. J.] were of opinion, and so decided, that the plaintiff was not at liberty to ask such question of the witness for the purpose of showing that he was interested and incompetent to give evidence relative to the location of *Carrollsburg*. The plaintiff excepted.

2. The plaintiff then offered in evidence a deed from *William Cochran's* executors to *James Young*, dated the 17th of August 1773, for 200 acres of land, part of *Car-*

rollsburg. Also a deed from *Samuel Emmit* to *William Shields*, dated the 29th of September 1787, for 106 acres, part of *Carrollsburg*. Also a deed from *Samuel Emmit* to *Samuel Carrick*, dated the 29th of September 1787, for 180 acres, part of *Carrollsburg*. Also a deed from *Charles Carroll* to *William Cochran*, dated the 6th of May 1757, for 2750 acres, part of *Carrollsburg*. And also a deed from *Samuel Emmit* to *William Emmit*, dated the 12th of August 1785, for 35 acres, part of *Carrollsburg*, wherein the lots of a new town called *Emmitsburg* are laid out, excepting as hereinafter excepted; and the different locations of those deeds made upon the plots by the plaintiff; and also in what manner the defendant had located the same. He also gave in evidence, that the main-street of the town of *Emmitsburg* is truly located on the plots by the plaintiff, and that the town is laid out upon the piece of ground so contained in the deed from *Samuel* to *William Emmit*; and that a large part of the town, which is now held and possessed by persons who have purchased lots therein, and have improved them, is without the lines of *Carrollsburg*, as located by the defendant, but within the lines of *Carrollsburg* as located by the plaintiff. He also gave in evidence the different improvements, cultivations, orchards, meadows and buildings, made under their purchases by the said *Young*, *Carrick* and *Shields*, as located on the plots, and the old divisional lines between the lands of *Carrick* and *Shields*, and between *Shields'* deed, and the part of *Carrollsburg* northwardly thereof. He further gave in evidence, that by establishing the out lines of *Carrollsburg*, as located by the defendant, it would cause a general confusion among the said tenants of parts of *Carrollsburg*, taking away from one the lands which he had possessed and cultivated, and the buildings and improvements he had made, and giving them to another, from whom also a part of the lands he had held and cultivated, and the improvements he had made, would be transferred to a third person, &c. The plaintiff's counsel, in addressing the jury, contended that they had a right to exercise a sound discretion in determining what location they would allow for the tract of land called *Carrollsburg*; whether they would settle the lines according to the present running, or by any other location, and that in doing this, they had a right, and it was their duty to fix the location in such man-

1815.

Shields
v.
Miller

ner as would best preserve to the different tenants of *Carrollsburg* the lands belonging to them, according to the manner in which they had held and improved them; and that they were not obliged to fix the lines of *Carrollsburg*, by their verdict, according to the location of the defendant, even though they should believe, that when *Carrollsburg* was originally surveyed it run correspondent with that location, as the lines of *Carrollsburg* are confined to course and distance, and do not correspond therewith, nor did when *Shields' Adventure* was taken up, but left the same out of the lines of *Carrollsburg*, as they then actually run. The defendant then gave evidence to prove, that he does not claim or make title to the land for which he takes defence, or any part thereof, or to any other lands, under or from the deed from *Samuel Emmit* to *William Shields*, from *Samuel Emmit* to *Samuel Carrick*, or from *Samuel Emmit* to *William Emmit*, or either of them; and that the location of *Carrollsburg*, according to which he has taken his defence on the plots, does not produce a general confusion among the holders of the said tract; and that the location thereof, contended for by the plaintiff, does not reconcile the said holdings, or the divisional lines, among the holders thereof. He also gave in evidence, that the location of *Carrollsburg*, according to which the defendant has taken his defence, is the true original location of that tract when the lines thereof were originally run. He then prayed the opinion of the court, and their direction to the jury, that the true location of the said tract is a question of fact to be decided by the jury on the evidence, and that it is the duty of the jury to find the location of the said tract in such place where, from the evidence, they should be of opinion that the lines thereof were originally run, unless they shall also find from the evidence that the defendant is prevented by some agreement, by adverse possession, or by some other legal bar, from availing himself of the said original location. This opinion the court gave. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at this term before Chase, Ch. J. and Nicholson, and Earle, J.

*Martin*, and *Pigman*, for the Appellant, on the *first* bill of exceptions, cited *Peake's Evid.* 122. 2 *Esp N. P.* 70, *(489;)* and *Chapline's Lessee vs. Keedy*, 3 *Harr. & M·Hen.* 578.

*Shaaff*, *Taney*, and *Harper*, for the Appellee, on the same exceptions, cited *Dickinson vs. Shee*, 4 *Esp. Rep.* 67; and *Peake's Evid.* 164, 152.

THE COURT dissented from the opinion of the County Court in the *first* bill of exceptions, and concurred in the opinion in the *second*.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.